UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                     Crim. No. 2:07-CR-78-1

Gareth Francis

## REPORT AND RECOMMENDATION
(Docs. 54, 72)

Gareth Francis, proceeding pro se, has filed a Motion pursuant to 28 U.S.C. §
2255 seeking to vacate, set aside, or correct a judgment and sentence imposed upon him
on September 9, 2008 in the United States District Court for the District of Vermont.
(Doc. 54.)  Francis was convicted following his guilty plea to two counts of providing
false information to a federal firearms licensee in connection with his acquisition of
handguns on separate occasions, in violation of 18 U.S.C. § 922(a)(6).  The evidence
revealed that Francis had falsely represented to the licensees on ATF Form 4473 that he
was a Brattleboro, Vermont resident when, in fact, he was a resident of Massachusetts.

Francis was sentenced on each count by Chief United States District Judge
William K. Sessions III to 51 months in prison, to be served concurrently to each other,
to be followed by a two-year term of supervised release, plus a mandatory total special
assessment of $200.  Francis demonstrated an inability to pay a fine and therefore all
fines were waived.  (Doc. 48.)  A timely notice of appeal was filed, but Francis, through
counsel, later withdrew the notice of appeal.  (Doc. 52.)  Francis now claims that he

received ineffective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution both prior to his plea and later at his sentencing.  For the reasons explained below, Francis's motion to supplement his argument (Doc. 72) is GRANTED and I recommend that the Court DENY Francis's motion to vacate, set aside or correct his judgment and sentence.  (Doc. 54.)

## I.      Procedural History

The records of this Court reveal the following:

### A.      Pre-Trial Proceedings

On June 28, 2007 an indictment was filed charging Francis with six counts of making material false statements to federal firearms licensees in connection with Francis's acquisition of pistols on different occasions, in violation of 18 U.S.C. § 922(a)(6).  (Doc. 3.)  On July 12, 2007 Francis was arraigned without counsel present and pled not guilty.  He was released on conditions.  The following day, the Court appointed Assistant Federal Public Defender ("AFPD") Robert Fellrath to represent Francis.  (Doc. 7.)  As discussed below, Francis struggled during this period of pre-trial release and numerous violations were reported by the U.S. Probation Office.

On January 24, 2008 an executed plea agreement was filed which required Francis to enter a plea of guilty to counts 1 and 4 of the indictment.  (Doc. 21.)  In the agreement, Francis also agreed to not commit any new offenses and, if released pending sentencing, to abide by conditions of release.  In exchange for Francis's plea of guilty and adherence to these and other standard conditions, the government agreed to (1) move to dismiss the remaining counts of the indictment at sentencing, (2) to make a recommendation at

sentencing that Francis should benefit from the offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and (3) to recommend a sentence at the low end of the applicable sentencing guideline range, assuming a final offense level calculation of 16 or more.  (Doc. 21.)

**B.   Change of Plea Proceeding**

On January 24, 2008 Francis appeared with counsel before Chief United States District Judge William K. Sessions III to change his plea consistent with his written agreement.  Francis acknowledged under oath that he was satisfied with the representation AFPD Fellrath had provided, that Fellrath had explained the nature of the charges, its elements, together with any defenses Francis might have.  (Doc. 49 at 5.) Chief Judge Sessions also reviewed the specific elements of a § 922(a)(6) violation which the government would have to prove beyond a reasonable doubt, as well as the maximum penalties with Francis.  Chief Judge Sessions thereupon explained to Francis his constitutional rights consistent with Fed. R. Crim. P. 11(b)(1), instructing Francis beforehand "to listen carefully because at the end I am going to ask you to acknowledge understanding those rights, together with the fact that you'd be waiving those rights by pleading guilty."  (Doc. 49 at 6-8.)  Francis acknowledged that he understood the rights which had been detailed by the Chief Judge and Francis also acknowledged an understanding that he was waiving or giving up those rights.  Chief Judge Sessions then undertook to review the plea agreement with Francis to assure that his plea was voluntary, as required by Rule 11(b)(2).  Francis reported that he had read the agreement and had reviewed it with his attorney.  The Court explained the obligations of the

3

government set forth in the written agreement and inquired of Francis if anyone had made any promises to Francis to induce him to plead guilty other than those set forth in the agreement.  The defendant responded in the negative.  The Court inquired of Francis if anyone had had made any promises or predictions as to the sentence to be imposed. Francis responded that he had been given no "promises" but that he had received some predictions as to the sentence.  The Court explained that any predictions were not binding on the Court.  The Court then explained the advisory nature of the sentencing guidelines. The government thereupon made an offer of proof if the matter were to proceed to trial. At the conclusion of the offer, Francis admitted that the government could in fact prove the facts just described to establish the two violations.  Chief Judge Sessions thereupon concluded that Francis's plea was made knowingly and voluntarily, entered with a full understanding of the charges and maximum penalties involved, that no promises had been made to Francis to induce him to plead guilty apart from those set forth in the plea agreement.  Francis's plea of guilty was therefore accepted and the Court ordered the preparation of a presentence report in anticipation of sentencing.  (Doc. 49 at 16.) Francis was released on the same conditions of release pending sentencing.  Sentencing was initially scheduled to occur on April 28, 2008 but later it was moved to May 30.

### C.    Withdrawal by Defense Counsel

On May 28, 2008, AFPD Fellrath filed a motion to be relieved as counsel.  (Doc. 28.)  In that motion, Fellrath reported that on May 16, he had disclosed to the Court that he had applied for a position as an Assistant United States Attorney in the District of Arizona.  Fellrath further reported that he had been offered the position and had accepted

4

the offer of employment, and had submitted his resignation as a public defender effective June 30, 2008.  According to Fellrath, Francis had been advised of these events and Francis chose not to waive the potential conflict of interest for the period of Fellrath's remaining few weeks with the Office of the Federal Public Defender, and the appointment of new counsel was necessary.  Fellrath was permitted to withdraw, and the Court appointed David Watts, Esq., an experienced member of this Court's CJA panel, to represent Francis.  Sentencing did not go forward on May 30.  Fellrath has since submitted an affidavit clarifying that he did not apply for the Arizona AUSA position until after the change of plea proceeding.  (Doc. 74.)

### D.    The PSR and Francis's Failure to Appear for Sentencing

A presentence report ("PSR") was submitted to the Court in anticipation of sentencing which had been rescheduled for July 21, 2008.  The PSR concluded that Francis faced an advisory Sentencing Guideline range of 37-46 months based on an adjusted offense level of 21 and a criminal history category of I.

The PSR revealed that in 2007 the Bureau of Alcohol, Tobacco, Firearms and Explosives ("AFF") commenced an investigation into Francis's activities upon receipt of information that Francis, a Quincy, Massachusetts resident, was engaged in the acquisition of multiple handguns in Vermont using a Vermont driver's license which bore a fictitious Brattleboro address.  (PSR ¶¶ 11-15.)  Under the Gun Control Act, it is unlawful for a licensee to sell a handgun to a person who is not a resident of the state where the licensee does business.  18 U.S.C. § 922(b)(3).  Gun dealer records revealed the acquisition of eleven semi-automatic pistols by Francis in Vermont and New

Hampshire in 2006-2007.  According to the PSR, ATF agents approached Francis on May 30, 2007 in the parking lot of a Vermont gun store and Francis agreed to speak with the investigators about his gun purchases.  Francis initially falsely claimed that he was a Vermont resident.  He was confronted with the fact that this story was false and he admitted that he was, in fact, a Massachusetts resident.  He stated to investigators that he had acquired a fraudulent Vermont driver's license in order to purchase handguns in Vermont.  He admitted taking eight of the eleven firearms to Canada where, according to Francis, he sold them to a Canadian gang member he identified only as "Luke." According to Francis, he engaged in this conduct because he owed a large debt to bookies in the Boston area.  Francis attempted to cooperate in the investigation by placing a recorded call to "Luke" but that effort failed.  When asked about a metal filing tool found in his vehicle, Francis advised investigators that "Luke" used the tool to obliterate the serial numbers of the firearms.

Francis was not arrested that day, and he agreed to meet with investigators again at a later date.  On June 5, 2007, Francis voluntarily met with ATF investigators at which time he changed his initial version of the events significantly.  During this meeting, he denied transporting the guns into Canada, and now claimed that he transferred the guns to two individuals in Vermont.  Francis declined to cooperate in the investigation unless he received assurances that he would be granted leniency at time of sentencing.  (PSR ¶¶ 16-21.)  Francis did not receive those assurances.  He again was not arrested.  Significantly, in a later sentencing memorandum submitted to the Court, Francis, through counsel, acknowledged that his second version of his offense conduct was not true.  (Doc. 35 at 3.)

Other investigation revealed that Francis regularly traveled to Canada after each firearm purchase.

Francis's Sentencing Guideline calculation in the PSR was determined as follows. The controlling Sentencing Guideline was determined to be § 2K2.1. To the base offense level of 12 set forth in § 2K2.1, four levels were added due to the number of firearms involved. Four more levels were added because Francis had reported that some of the firearms had obliterated serial numbers, and an additional four levels were added as Francis had engaged in trafficking of the firearms, all consistent with § 2K2.1(b). The government objected to the conclusion in the PSR that Francis had manifested an acceptance of responsibility for his conduct under U.S.S.G. § 3E1.1 and objected to the resulting three level reduction in the offense level calculation. The record revealed that Francis failed to appear for drug testing on 10 occasions, had failed to report to the U.S. Probation Office on repeated occasions, and failed to report arrests by state authorities while on pre-trial supervision. Francis had no countable criminal convictions, placing him in criminal history category I. Attorney Watts filed two sentencing memoranda in an effort to rebut the assertions concerning Francis's violations, attributing his client's conduct to misunderstandings in the supervision process. Watts also argued in the memoranda for a downward departure, relying on U.S.S.G. § 5K2.0, or an adjustment of the guideline range under 18 U.S.C. § 3553(a). Watts argued for a downward departure or adjustment to account for the fact that it was Francis's own statements that led to some of his Guideline enhancements. Francis, however, failed to appear for the July 21 sentencing. Francis had a girl friend convey false information to the Court that there had

7

been an emergency hospital admission.  (Doc. 64 at 7.)  An arrest warrant was issued and

Francis was later arrested by the U.S. Marshals Service hiding in the attic of his

Massachusetts residence in possession of a loaded firearm.  A second gun was found in

his kitchen.

### E.    Sentencing

Francis was returned to Vermont for sentencing following his apprehension in

Massachusetts, and on September 9, 2008, Francis appeared before Chief Judge Sessions.

(Doc. 50.)  Chief Judge Sessions ascertained from both defense counsel and Francis

himself that Francis had, in fact, reviewed the PSR with counsel and that there were no

factual mistakes in the report.  (Doc. 50 at 3.)  The Court indicated that it had read the

various sentencing memoranda and the only sentencing guideline issue that remained for

resolution was the government's objection to the acceptance of responsibility offense

level reduction.  In addition, the Court noted that Francis was seeking a downward

departure from the applicable guideline range or, alternatively, an adjustment to the

advisory range pursuant to the factors set forth in 18 U.S.C. § 3553(a).

The Court also sought to clarify the defendant's varying versions of the offense

conduct.  As noted above, the PSR noted that the defendant had told investigators that he

had transferred the guns to criminal gang members in Montreal but later changed the

story significantly.  Attorney Watts chose not to attempt to reconcile the differing

versions told by Francis to investigators, but argued the varying stories revealed the depth

of Francis's drug addiction.  Watts also argued a theory of duress, adding that his client

was induced to commit the criminal conduct by the bookies to which he was indebted.

8

Attorney Watts, in an effort to explain Francis's criminal conduct and his violations of release conditions, argued that his client had been severely addicted to prescription opiates.  As a result of that unaddressed addiction, Francis was indebted to, and fearful of, Boston organized crime figures, and, as a result, committed the crimes.  (Doc. 50 at 13-14.)  Francis joined in this strategy, telling the Court he had indeed changed for the better.

After hearing argument of counsel, and hearing from Francis himself, the Court concluded that Francis had failed to accept responsibility for his crimes by failing to appear for sentencing and being found in possession of a loaded gun when arrested by the Marshals (conduct which Judge Sessions described as both "egregious" and "dangerous").  Chief Judge Sessions also highlighted the seriousness of the offense conduct, noting that the defendant had transferred numerous handguns to either gang members in Canada or Boston organized crime figures.  (Doc. 50 at 31.)  The Court adopted the remaining uncontested conclusions of the PSR, and expressly declined to depart from the revised sentencing guideline range of 51-63 months, or to otherwise adjust the sentence under § 3553(a).  The Court imposed the 51 month sentence, which was the low end of the guideline range, together with the 2 year term of supervised release and the mandatory $200 special assessment.  Although a notice of appeal was filed by counsel for Francis after the sentencing it was later withdrawn.

## II.    The Motion to Vacate

Presently before the Court is Francis's timely motion to vacate, set aside or correct his sentence filed pursuant to 28 U.S.C. § 2255 (Doc. 54) and a motion to file a

supplemental brief (Doc. 72)  Francis asserts that he was denied his Sixth Amendment right to effective assistance of counsel.  With regard to Attorney Fellrath, Francis claims that Fellrath was ineffective in failing to move for suppression of Francis's statements to investigators, and in purportedly telling Francis that he "had no viable defense" thereby "coercing" Francis to plead guilty.  Francis also claims that he was told–presumably by Fellrath–that "my first time offender status and lack of criminal convictions" would yield a non-guideline sentence.  Finally, Francis asserts that Fellrath's decision to apply for, and ultimately accept, a position in another district as an AUSA was a conflict of interest and therefore "in essence" his lawyer was a federal prosecutor.

With regard to Attorney Watts, Francis raises numerous claims to support his assertion that Attorney Watts was similarly ineffective in his representation of Francis at sentencing.  First, Francis argues Watts failed to contest the accuracy of a short narrative of the events surrounding his 2007 conviction for witness intimidation described in paragraph 40 of the PSR.  In particular, in that narrative, Francis was described as having made a derogatory statement about police officers.  Francis now believes that this statement should not have been in the PSR.  Next, Francis claims that Watts failed to object to the four level increase Francis sustained under the sentencing guidelines for possession of firearms for which the serial numbers had been obliterated.

Francis also claims that he was not given an opportunity to either review his PSR in advance of sentencing or to object to purported inaccuracies in the PSR.  Francis also vaguely argues that "there is also the matter of claims made by the prosecution regarding my arrest for a failure to appear which were inaccurate."  Francis now asserts that

Attorney Watts should have sought a continuance of the sentencing, apparently for a greater opportunity to rebut these supposedly inaccurate statements.

In addition to his ineffective assistance claims, Francis contends that his pre-indictment statements to ATF investigators were unlawfully coerced by threats of incarceration and the prospect of subsequent abuse in prison. As his final contention, Francis claims his sentence of 51 months is disproportionate to sentences imposed for other "first-time offenders."

Francis seeks by way of relief an opportunity to withdraw his plea of guilty, or, in the alternative, a new sentencing hearing. The government opposes Francis's petition.

## III.    Standard of Review

28 U.S.C. § 2255 is intended to remedy fundamental defects in a criminal prosecution. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). A court may grant relief under this section only for constitutional errors, lack of jurisdiction, or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice. *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996). The Supreme Court has defined a "miscarriage of justice" as a claim of actual innocence. *See United States v. Olano*, 507 U.S. 725, 736 (1993).

Section 2255 "may not be used as a substitute for a direct appeal." *Marone v. United States*, 10 F.3d 65, 77 (2d Cir. 1993) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)); *see United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998). Accordingly, the general rule is that a claim not raised on direct appeal is procedurally defaulted and may not provide the basis for § 2255 relief absent a demonstration of cause and prejudice

or actual innocence.  See *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007).

"Cause" for failing to raise an issue on appeal "must be something external to the

petitioner, something that cannot fairly be attributed to him."  *Coleman v. Thompson*, 501

U.S. 722, 753 (1991).  Stated differently, the "cause" standard requires the petitioner to

show that "some objective factor external to the defense impeded counsel's efforts to

raise the claim . . . ."  *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citation omitted).

"Prejudice" requires a showing that the alleged error "so infected the entire trial that the

resulting conviction violates due process."  *Frady*, 456 U.S. at 169.  Both cause and

prejudice must be shown.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v.

Lord*, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

      Francis's ineffective assistance of counsel claims are not subject to the failure-to-

appeal procedural bar discussed above, and such a claim may generally be raised for the

first time on collateral review.  *Massaro v. United States*, 538 U.S. 500, 509 (2003).

      A criminal defendant asserting that an attorney was constitutionally deficient must

show that the lawyer's performance "fell below an objective standard of reasonableness"

and that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different."  *Strickland v. Washington*, 466

U.S. 668, 688, 694 (1984).  The standard of *Strickland* "is rigorous, and the great

majority of habeas petitions that allege constitutionally ineffective counsel founder on

[it]."  *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).  A § 2255 petition is not an

opportunity to second guess sound strategy.  *See Strickland,* 466 U.S. at 689 ("[T]he

defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (quotation marks omitted).

The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. *See Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 687-91).

In considering an actual ineffectiveness claim, the Court must presume that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment;" and that "counsel's conduct f[ell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689-90. Finally, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691.

Relevant here, statements at a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[U]nsupported allegations which merely contradict[] [a defendant's] earlier statements made under oath at his plea allocution" do not provide sufficient grounds for withdrawal of a guilty plea as involuntary. *United States v. Gonzalez*, 970 F.2d 1095, 1100-01 (2d Cir. 1992); *see also*

*United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea.").

IV.   **Analysis**

   A.   **Claim of Ineffective Assistance of Counsel Prior to Francis's Plea of Guilty**

   1.   **Fellrath's Acceptance of a Job as an AUSA**

Francis asserts that he was denied effective assistance of counsel "at my change of plea and leading up to it" (Doc. 54 at 4) contending that his first attorney, AFPD Fellrath, was burdened by a conflict of interest because Fellrath sought, and later accepted, a position as an Assistant United States Attorney in the District of Arizona.

The Sixth Amendment right to counsel includes a right to conflict-free counsel. *Hess v. Mazurkiewicz,* 135 F.3d 905, 910 (3d Cir. 1998). "This requirement is an essential foundation of our adversarial system of justice, providing the minimum necessary to ensure that criminal defendants receive representation that 'puts the government to its proofs in an adversarial manner.'" *Id.*, quoting *United States v. Mascony,* 927 F.2d 742, 748 (3d Cir. 1991). Counsel is ineffective if he or she "'actively represented conflicting interests' and an actual conflict of interest adversely affected the lawyer's performance." *Id.*, quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980). In such cases, prejudice will be presumed and a defendant need only show that the actual conflict adversely affected counsel's performance, not that this adverse performance casts doubt on the reliability of the verdict. *Cuyler,* 446 U.S. at 350.

However, in this case, Francis's claim fails because the record reveals that Fellrath was simply not burdened by a conflict.  Fellrath's affidavit establishes that he was not an applicant for the Arizona position when he represented Francis at the change of plea hearing.  Francis pled guilty to the two counts of the indictment on January 24, 2008.  Attorney Fellrath's affidavit discloses that he did not apply for the position in the Arizona Unites States Attorney's Office until January 29, 2008 and that he was offered the position on May 16, 2008.  (Doc. 74.)  Fellrath moved to withdraw from the case on May 28, 2008.  Francis has therefore failed to demonstrate as a threshold matter there was an actual conflict of interest - that is, that Fellrath was required to make a choice to advance his own interest to the detriment of his client.  Unless a defendant can show such active representation of conflicting interests by his attorney "he has not established the constitutional predicate for his claim of ineffective assistance."  *Cuyler,* 446 U.S. at 350; *see also United States v. Horton,* 845 F.2d 1414, 1419 (7th Cir. 1988) ("We will not indulge in the presumption that a defense attorney being considered for a position as United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interests in mind."); *Costanzo v. United States,* 758 F. Supp. 869 (S.D.N.Y. 1990) (allusions to mere possibility of a conflict of interest due to application for position as a AUSA is insufficient).

## 2.     Predictions Regarding Sentence

Francis also contends that he "was told that given my first time offender status and lack of criminal convictions it was very unlikely [he] would receive a guideline sentence and possibly no incarceration at all."  This assertion conflicts with the record before the

Court.  In his Rule 11 colloquy, Chief Judge Sessions reviewed the written plea

agreement with Francis, ascertaining that Francis understood that in the written plea

agreement the United States stated that no promises beyond those set forth in the

agreement had been made to Francis to induce his pleas of guilty.  (Doc. 49 at 10.)

Francis indicated that, in fact, no promises beyond those set forth in the plea agreement

had been made to him; that he had reviewed the effect of the sentencing guidelines with

Attorney Fellrath, and that although "predictions" in regard to sentencing ranges had

been made in that review, no promises had been made by Fellrath.  (Doc. 49 at 11.)

Chief Judge Sessions ascertained that Francis understood that any promises or predictions

were not binding on the Court and that the Court could impose a sentence up to the

maximum penalty.  (Doc. 49 at 11.)

Francis's present claims are insufficient to overcome these solemn declarations,

made under oath, at his guilty plea.  *See, Blackledge,* 431 U.S. at 74 (1977); *see also,*

*United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d. Cir. 1992).

### 3.    Claim of a Coerced Confession

Francis claims that Fellrath was ineffective for not moving to suppress his non-

custodial statements to the ATF.  Francis however fails both the performance and

prejudice prong of *Strickland*.  First, Francis's claim in his motion that agents threatened

him is belied by his statements to Chief Judge Sessions, under oath, at his change of plea

that no one had threatened him.  (Doc. 49 at 8.)  Such statements are generally treated as

conclusive in the face of a defendant's later attempt to contradict them.  *Gonzalez*, 970

F.2d at 1101.  Second, Francis cannot satisfy the prejudice prong of *Strickland*.  Francis

does not specify which of his two non-custodial confessions is at issue.  One could infer

he is alleging that it was during his first meeting with the investigators on May 30, 2007

where the alleged threats were made, as it is alleged to have occurred in an agent's car.

(Doc. 54 at 7.)  Francis's second confession occurred at the ATF office.  He advances no

issue with regard to that second statement.  Francis does not dispute that the investigation

had revealed that he had fraudulently acquired a Vermont driver's license (although he

was a Massachusetts resident) in order to purchase the guns.  The false Forms 4473 were

acquired by investigators in the course of their investigation.  In short, Francis can show

neither a deficient performance by Fellrath nor prejudice arising from the failure to

pursue a motion to suppress.

> **B.      Claim of Ineffective Assistance of Counsel at Sentencing**

Francis asserts several grounds in support of his contention that Attorney Watts

rendered ineffective assistance of counsel.  None of the claims have merit.

> **1.      Failure to Rebut Derogatory Statements in the PSR**

The criminal history section of the PSR reveals that in 2007 Francis was charged

in a Massachusetts state court with a violation of an abuse prevention order.  (PSR ¶ 40.)

The charge was disposed of by means of a "continued without a finding" disposition,

which the First Circuit has recognized is a type of conviction.  *United States v. Reyes*,

386 F.3d 332 (1st Cir. 2004).  The narrative section described the criminal conduct, as

well as derogatory statements Francis made about police officers to an investigator during

the investigation of that offense.

Francis now argues that Watts was ineffective at sentencing for failing to challenge the presence of this statement in his PSR.  He argues that Watts should have called Francis's former girlfriend as a witness to rebut the assertion that Francis had made the derogatory statements.  Francis's claim again fails both the performance and prejudice prongs of the *Strickland* test.   Attorney Watts has submitted an affidavit which reveals that he, in fact, spoke to the former girlfriend and her testimony simply would not have supported Francis's current version of the events.  (Doc. 64.)  More importantly, Watts reports that his failure to address the veracity of statements made by Francis from a *prior* conviction was part of a larger strategic effort to portray Francis at the time of his sentencing as a changed man, one who had matured and grown from one who had been addicted to opiates.  Contesting the old irrelevant statements simply did not serve that larger purpose, according to Watts.  (Doc. 64.)  Such sound strategic decisions are not the proper subject for § 2255 review.  Francis also fails *Strickland's* prejudice prong in that he has failed to present any evidence that his sentence, imposed consistent with the applicable advisory Sentencing Guideline, would have been any different if the challenged statements had been stricken from the PSR.

### 2.    Failure to Object to the Obliterated Serial Number Enhancement

Francis argues that Watts was ineffective by failing to object to the application of the four level increase to his offense level calculation under U.S.S.G. § 2K2.1(b)(4) for the obliteration of firearm serial numbers.  According to the PSR, Francis admitted to investigators that the serial numbers on the firearms had been obliterated by his associate ("Luke") when Francis transferred the guns to Luke.  (PSR ¶¶ 19, 28.)  At the sentencing

hearing Chief Judge Sessions specifically asked Francis if he had read the PSR, and if so, whether there were any factual inaccuracies in the report.  (Doc. 50 at 3.)  Francis responded to Chief Judge Sessions by affirming that he had indeed read the report and there were no factual inaccuracies or mistakes.  It is well settled that a defendant's failure to contest factual allegations included in a PSR permits a district court to treat those uncontested facts as true in sentencing.  *United States v. Streich*, 987 F.2d 104,107 (2d Cir. 1993).

Francis also advances this claim based on his apparent misunderstanding of U.S.S.G § 2K2.1(b)(4).  He argues that Watts failed to object to the application of the enhancement "despite the record clearly showing I always maintained I never did" obliterate a serial number.  However, as Attorney Watts explains in his affidavit, it is of no consequence that Francis himself did not engage in the obliteration of the serial numbers.  (Doc. 64.)  Application Note 8 to the Commentary to U.S.S.G. § 2K2.1(b)(4) provides that the enhancement should be applied regardless of whether the defendant knew or had reasonable cause to believe that the firearms at issue had obliterated serial numbers.  Recognizing this impediment, Watts made the strategic decision to seek a downward departure from the applicable sentencing guideline range under U.S.S.G. § 5K2.0 by arguing, in part, that a downward departure was warranted for extraordinary acceptance of responsibility as it was through Francis's *own* admissions to investigators that gave rise to the application of the enhancement.  (Doc. 64 at 4-5.)  This strategic approach was well within the bounds of competent legal representation, and Francis's argument fails both prongs of the *Strickland* test.

In a related claim, Francis argues that Attorney Watts was also ineffective for not arguing that the § 2K2.1(b)(4) enhancement, if applicable at all, should have been limited to only two levels.  Francis correctly points out that for offenses committed before November 1, 2006, the enhancement was indeed limited to two levels.  The Sentencing Commission, however, amended § 2K2.1(b)(4) effective November 1, 2006.  Francis now argues that Watts should have argued that application of the amended version of § 2K2.1(b)(4) requiring a four level enhancement violated the Ex Post Facto clause.  Francis's claim fails however for the simple reason that he pled guilty to an offense committed after the Sentencing Commission increased the offense level adjustment for obliterated firearms.  Francis pled guilty to two violations of 18 U.S.C. § 922(a)(6) including count 4 of the indictment.  (Docs. 3, 21 and PSR ¶ 6.)  Count 4 of the indictment alleged that the false statement offense occurred on January 31, 2007.  (Doc. 3.)  The applicable sentencing guideline, U.S.S.G. § 2K2.1(b)(4) was amended by the sentencing commission in Amendment 691, and was made effective for offenses committed on or after November 1, 2006.  U.S.S.G., App. C, Amendment 691.  There are simply no Ex Post Facto implications at work here and Watts was not ineffective for not objecting to the application of a version of § 2K2.1(b)(4) applicable to offenses committed on the day of the commission of the crime, January 31, 2007.

### 3.   Disclosure and Review of the PSR

Francis asserts that "I was not given a chance to object to inaccuracies in my PSR, and did not review it 10 days prior to sentencing as is required by law."  (Doc. 54 at 5.)

20

As discussed above, Chief Judge Sessions afforded Francis an opportunity to object to any inaccuracies in his PSR.  Under oath, Francis affirmed the accuracy of the contents of the PSR.  As discussed previously, his unsupported allegations contradicting his plea allocation are insufficient.  With regard to the issue of disclosure, the probation officer certified to the Court that the PSR had been disclosed to Francis and his attorney as of June 27, 2008, its date of final revision.  Francis chose not to appear for his scheduled sentencing of July 21, 2008 and was arrested in Massachusetts on July 23. (Doc. 38.)  Watts's affidavit and accompanying exhibits reveal that Francis ignored all efforts by Watts to communicate with Francis.  Watts repeatedly sought out Francis to review the PSR and to discuss possible objections to the PSR, and Francis ignored all efforts by Watts.  (Doc. 64-1.)  Plainly, Watts's yeoman efforts, all but ignored by Francis, were well within the reasonable bounds of competent representation.

Francis also confuses the requirements of Rule 32 of the Federal Rules of Criminal Procedure.  Contrary to Francis's assertion, Fed. R. Crim. P. 32 does not require that a defendant review a PSR 10 days prior to sentencing as he claims.  Rule 32 requires that the preliminary PSR be disclosed 35 days before sentencing and that the final PSR and any addendum be disclosed 7 days before sentencing.  Those disclosures were made, and Rule 32 complied with fully.

Finally, even assuming *arguendo* that some violation of Rule 32 sentencing procedures occurred, the Supreme Court has held that a technical violation of Rule 32 does not amount to "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair

21

procedure," and thus, is not cognizable on collateral review. *Hill v. United States*, 368 U.S. 424, 428-29 (1962) ("collateral relief is not available when all that is shown is a failure to comply with the formal requirements of . . . Rule [32]"); *see Basile v. United States*, 999 F.2d 274, 276 (7th Cir. 1993) ("[A] mere technical violation of Rule 32 cannot be corrected in a proceeding under § 2255."). Francis has simply failed to demonstrate that the claimed error is one of a "constitutional magnitude which had a substantial and injurious effect or influence on [his] guilty plea." *Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

### 4.      Statements at Sentencing by the Prosecutor

Tucked into his ineffective assistance claim, Francis also includes a vague challenge to statements made by the prosecutor at his sentencing. Francis writes: "There is also the matter of claims by the prosecution regarding my arrest for failure to appear in court which were inaccurate and that considering this is now an open, unresolved case should never have been made at my sentencing hearing." (Doc. 54 at 6-7.)

Francis does not specify what statements made by the prosecutor were objectionable and the Court will not engage in speculation. Regardless, Francis did not appeal from his conviction and sentence. He presents no cause for this procedural default nor does he show any resulting prejudice. Nor has he presented any evidence of actual innocence. Therefore this claim is procedurally defaulted. *Reed v. Farley*, 512 U.S. 339, 354 (1994)

The claim also lacks substantive merit.  The sentencing transcript reveals that the prosecutor advised the Court of the circumstances surrounding Francis's arrest in Massachusetts following his failure to appear.  Francis's failure to appear had been accompanied by a false excuse which had been conveyed to the Court.  (Doc. 64.)  There was nothing improper about the prosecutor's comments as they concerned the issue as to whether Francis had truly accepted responsibility under the sentencing guidelines for his conduct.  18 U.S.C. § 3661 pointedly provides that "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court may receive and consider for the purpose of imposing an appropriate sentence."  Accordingly, this claim is legally meritless.

### 5.      Failure to Seek a Continuance

Francis faults Watts's performance in that he alleges that Watts "should have postponed my sentencing."  Francis is in error.  Attorney Watts did successfully seek a continuance from the original sentencing date of July 15, 2008.  (Doc. 31.)  The Court moved the sentencing to July 21 (Doc. 32) and Francis failed to appear on that date. Francis fails to explain how a continuance following his failure to appear would have helped him, or even that a second request to continue the sentencing would have been granted.  Furthermore, "a sentencing court has broad discretion respecting the scheduling of sentencing proceedings.  Absent a showing that the denial was arbitrary and that it substantially impaired the defendant's opportunity to secure a fair sentence we will not vacate a sentence because a continuance was denied."  *United States v. Prescott*, 920 F.2d

139, 146-47 (2d Cir. 1990).  This claim of error is simply not of a constitutional magnitude.

### C.      Remaining Claims

Francis also advances claims in addition to his ineffective assistance of counsel claim.  These too are meritless.

### 1.      Claim of a Disproportionate Sentence

Francis argues that his sentence is disproportionate to other sentences received by offenders with a criminal history category of I.  He provides no empirical support for this conclusion.  Having failed to pursue an appeal of his sentence, and demonstrating neither cause nor prejudice from this failure, the claim is defaulted.  *Marone*, 10 F.3d at 67. Significantly, at the change of plea proceeding, Chief Judge Sessions made it clear to Francis that the Court had the power to sentence him to a term that was more severe than the Guideline sentence ultimately imposed.  Regardless, the sentence was well within the authorized statutory maximum.  A sentence that is within the statutory maximum does not run afoul of the Eighth Amendment's proscription against sentences that are disproportionate to the crimes committed by the offender.  *United States v. Caracappa*, Nos. 09-1177-cr, 09-3115-cr, 2010 WL 2884970 (2d Cir. Jul. 23, 2010).

### 2.      Coerced Confession

As discussed above, as part of his ineffective assistance of counsel argument, Francis asserts that his confession was improperly coerced by ATF agents.  A reading of his motion suggests that Francis also advances this contention independently from his Sixth Amendment violation.  Francis's claim fails however as a counseled and voluntary

guilty plea bars all non-jurisdictional defects in a prior proceeding. *Lebowitz v. United States*, 877 F.2d 207, 210 (2d Cir. 1989). Francis's claim with regard to his statement is non-jurisdictional and therefore is waived by his plea of guilty. Assuming, *arguendo*, that the guilty plea did not extinguish his pre-plea right to challenge his statements, Francis failed to pursue an appeal. As discussed above, he presents no cause for this failure to pursue an appeal or resulting prejudice. Therefore the claim is procedurally defaulted under traditional habeas analysis.

### 3. ATF Forms

Francis was convicted of making false statements on two ATF Forms 4473. He now alleges that he did not sign "some of the forms." (Doc. 54 at 4). It is unclear which forms he is now referring to, as he was charged with six separate violations. Nevertheless, he cannot now raise this claim in light of his counseled and voluntary plea of guilty. *Lebowitz*, 877 F.2d at 210. Moreover, under oath, Francis agreed at his change of plea that the government could indeed prove that he signed the two Forms 4473 that formed the basis of the counts of conviction. (Doc. 49 at 15.) His current claim is not credible in light of his solemn declarations under oath at his change of plea. Finally, Francis abandoned the appeal of his conviction and presents no cause for such failure or resulting prejudice. Again, the claim is subject to procedural default.

## V. Conclusion

Francis's motion to file the supplemental brief which is Doc. 72 is GRANTED, and the arguments set forth therein have been considered by the Court.

It is clear from the record in this case that Attorneys Fellrath and Watts provided Francis with reasonable professional assistance.  Fellrath was not acting under any conflict when he represented Francis.  The decisions made by both Fellrath and Watts were sound strategic decisions made in the exercise of sound professional judgment. Francis's other claims of error are meritless.  For these reasons I recommend that the motion to vacate, set aside or correct the sentence or judgment (Doc. 54) be DENIED.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* Local Rules 72(a), 72(c), 73(e); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).